# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AZANIAH BLANKUMSEE, No. 326-698, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. PWG-18-106 |
| RICKY FOXWELL, Warden of ECI, | * | |
| ROBERT TROXELL, CDM, | | |
| DALE CHILDERS, Correctional Officer, | * | |
| ANTOINETTE PERRY, Cpt. at ECI, | | |
| MEDICAL DEPARTMENT at ECI, | * | |
| Defendants | * | |

***

## MEMORANDUM OPINION

Plaintiff Azaniah Blankumsee has filed another civil rights action alleging various violations of his constitutional rights. ECF No. 1; *see* ECF No. 1-13 (corrected compl.).[1]

---

[1] The corrected Complaint has all pages properly oriented but is otherwise the same as the Complaint. Plaintiff labeled the Complaint "Verified Complaint," but the Complaint is not actually verified. *See* Compl. 1, 4.

Plaintiff requested that his case be assigned to a different judge because he believes that previous orders granting summary judgment in the defendants' favor in other cases of his that have been assigned to me show bias on my part. *See* Cover Ltr., ECF No. 1-14. The case nonetheless was assigned to me, and accordingly I will issue my ruling. A judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The judge's purported "bias or prejudice must, as a general matter, stem from 'a source outside the judicial proceeding at hand' in order to disqualify a judge." *Belue v. Leventhal*, 640 F.3d 567, 572 (4th Cir. 2011) (quoting *Liteky v. United States*, 510 U.S. 540, 545, 551 (1994)). Thus, a judge must recuse himself or herself if an extrajudicial source provides a reasonable factual basis for calling the judge's impartiality into question. *In re Beard*, 811 F.2d 818, 827 (4th Cir. 1987). "The inquiry is whether a reasonable person would have a reasonable basis for questioning the judge's impartiality, not whether the judge is in fact impartial." *Id.*; *see Liteky*, 510 U.S. at 548 ("[W]hat matters is not the reality of bias or prejudice but its appearance."); *see also Demery v. McHugh*, No. PWG-13-2389, 2015 WL 13049184, at *2 (D. Md. Oct. 23, 2015) (same), *aff'd,* 641 Fed. App'x 263 (4th Cir. 2016). Since Plaintiff has failed to state a basis for my recusal, the motion is denied. *See* 28 U.S.C. § 455(a); *Liteky*, 510 U.S. at 545, 551; *Belue*, 640 F.3d at 572; *In re Beard*, 811 F.2d at 827.

Defendants Warden Ricky Foxwell, Robert Toxell, Dale Childers, and Antoinette Perry have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 11, and a Memorandum in Support, ECF No. 11-1. Plaintiff has filed an Opposition, ECF No. 13, as well as a Motion for Summary Judgment, ECF No. 14. Defendants have not filed a reply regarding their Motion, or a response to Blankumsee's Motion, and the time for doing so has passed. *See* Loc. R. 105.2(a). The matter is now ripe for review, and a hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2018). Because Plaintiff has not exhausted his administrative remedies, his Motion for Summary Judgment is DENIED and Defendants' Motion, construed as a Motion for Summary Judgment, is GRANTED. Because Defendant Medical Department at Eastern Correctional Institution ("Medical Department") was not party to the Motion and does not appear to have been served, I will not address Plaintiff's allegations regarding failure to provide medical treatment at this time. Rather, the Court will direct that service on the Medical Department be effected, and once it has been served I will schedule proceedings to address Plaintiff's claims against it.

## BACKGROUND

Plaintiff filed suit no later than December 19, 2017. *See* ECF No. 1-12 (envelope containing Complaint post-marked December 19, 2017); *see also Houston v. Lack*, 487 U.S. 266, 270-72 (1988) (discussing prison mailbox rule). The Complaint concerns two unrelated incidents that occurred at Eastern Correctional Institution ("ECI") in October 2017, as well as the medical treatment Plaintiff sought but alleges he did not receive.

First, Plaintiff alleges that Officer Childers and Captain Perry wrongfully confiscated his property when he transferred to ECI on October 5, 2017. Compl. 1-2. Among other items, this property included a wrist brace and special shoes that Plaintiff had been authorized to possess at his previous institution. *Id.* Plaintiff alleges that the shoes were prescribed for medical reasons

2

and the wrist brace was authorized because he suffers from carpal tunnel syndrome. *Id.* at 2; *see* Med. Rept., ECF No. 1-2 (shoe prescription). When Plaintiff left his former institution, he signed a Receipt for Accountable Items, ECF No. 1-1. which stated that he "agree[d] to take care of . . . (2) wrist braces" and that "[i]f [he was] transferred or released from this facility, [he would] be allowed to take this item with [him]."

Plaintiff filed an administrative grievance against Childers and Perry on October 6, 2017, for wrongfully taking his property. Compl. 2; ARP No. 2617-17, at 1-3, ECF No. 1-4; ARP No. 2617-17, ECF No. 11-3, at 16. The same day, Childers and Perry issued a notice of a disciplinary infraction against Plaintiff because he possessed contraband, including the wrist brace and shoes. Compl. 2; Notice of Inmate Rule Violation, ECF No. 1-5.

A hearing regarding the infraction was conducted on October 24, 2017. Inmate Hr'g Rec., ECF No. 1-6. At the hearing, Plaintiff agreed to an informal disposition and his "sweatpants, wrist[]brace, and jeans were ordered [to be] return[ed] to Plaintiff." Compl. 2; Inmate Hr'g Rec. 2. Plaintiff claims that when he attempted to collect these items from the property room, Childers told Plaintiff "that he did not care about the hearing decision, he was not giving Plaintiff anything." Compl. 2. While Plaintiff was exiting the property room, he attempted to speak to Perry, who told Plaintiff: "since you wrote me up, live with it." *Id.*

Plaintiff filed another ARP on October 25, 2017, following the hearing, complaining that, as a result of "the illegal procedures and criteria ECI have arbitrar[il]y adopted under the ECI's property policy," Childers would not return his property. ARP No. 2800-17, ECF No. 1-7. He claimed that Childers told him that the Warden "overturned the hearing officer['́]s decision" and would not let Blankumsee speak "to a Captain or Warden." *Id.* ARP No. 2800-17 was "[d]ismissed for procedural reasons," specifically, because "[i]nmates may not seek to resolve a complaint

3

through the ARP for Inmate disciplinary proceeding procedures and decisions." *Id.*

On November 6, 2017, Plaintiff appealed the denial to the Commissioner of Correction, arguing that ARP No. 2800-17 was not challenging the result of the disciplinary hearing but was instead challenging Defendant Childers' refusal to return Plaintiff's property after the hearing. Appeal of ARP No. 2800-17, ECF No. 13-6. The ARP appeal was dismissed on November 21, 2017 for the same procedural reasons. *Id.* Plaintiff does not suggest, nor is there any indication in the filings, that he sought further review of this appeal with the Inmate Grievance Office.

Meanwhile, ARP No. 2617-17 was investigated, ARP Case Summary, ECF No. 11-3, at 20-23, and Warden Foxwell rejected it on November 17, 2017, explaining that Plaintiff had accepted an informal disposition at his October 24, 2017 hearing in which his sweatpants, wrist brace, and jeans were returned to him and his other items were to be mailed out of the institution or destroyed. ARP No. 2617-17, ECF No. 11-3, at 16. Plaintiff acknowledged receiving the Warden's decision on November 21, 2017. Receipt, ECF No. 11-3, at 30.

The same day, he filed an appeal of the Warden's decision in ARP No. 2617-17. Appeal of ARP No. 2617-17, ECF No. 11-3, at 48-49. On November 29, 2017, Plaintiff was informed that the Warden was exercising his one permitted extension of time to respond to the ARP appeal, and that the Warden's response to Plaintiff's appeal would be due January 13, 2018. Extension Form, ECF No. 11-3, at 31.

No later than December 19, 2017, before the Warden had responded to Plaintiff's appeal, Plaintiff filed this lawsuit. Plaintiff alleges that, as of the date he wrote the Complaint, he has "not received his wrist brace or shoes back, nor have [sic] plaintiff seen any medical provider despite the many sick calls he's filed." Compl. 3. Plaintiff alleges that depriving him of his wrist brace and special shoes violates the Americans with Disabilities Act and his constitutional protection

4

against cruel and unusual punishment. *Id.*

In January 2018, Plaintiff's appeal of ARP No. 2617-17 was investigated and rejected. Dismissal, ECF No. 11-3, at 47, 50-51.

The second incident discussed in the Complaint is the fact that turkey sausages made with pork stock were served to Plaintiff and other inmates on the morning of October 25, 2017. Compl. 3; Food Label, ECF No. 1-9. Plaintiff states that consuming pork is against his religion—he is Christian—and notes that the Department of Corrections' rules prohibit pork from being served in prison facilities. Compl. 3; ARP No. 2943-17, at 2-3, ECF No. 1-8. He alleges that the act of serving him food containing pork stock violates his rights under the Free Exercise clause of the First Amendment. Compl. 3.

On November 13, 2017, Plaintiff filed ARP No. 2943-17 regarding the pork stock in the turkey sausage. ARP No. 2943-17, ECF No. 11-3, at 56-59; ARP No. 2943-17, ECF No. 1-8. The Warden responded on January 3, 2018, stating that Plaintiff's grievance was meritorious in part, as it was determined that the turkey sausage contained pork sock. ARP Resp., ECF No. 11-3, at 56. He stated that the product "was served as an oversite [sic] by multiple departments and the vendor," and "ha[d] been pulled and will not be served in the future." *Id.* The Warden stated that "[e]ating of pork products does not cause health issues." *Id.*

As noted, Plaintiff filed his Complaint no later than December 19, 2017. The Warden did not respond to ARP No. 2943-17 until January 3, 2018, more than two weeks later. *Id.* at 56.

Plaintiff does not dispute Defendants' argument that he failed to exhaust his administrative remedies, nor does he argue that such remedies were unavailable to him. *See* Pl.'s Opp'n. Nor does he provide any discussion of exhaustion of administrative remedies in his own Motion for Summary Judgment. *See* Pl.'s Mot.

## STANDARD OF REVIEW

Defendants' dispositive Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Because Defendants have filed and relied on declarations and exhibits attached to their dispositive Motion, and Plaintiff has filed exhibits in response, the Motion shall be treated as one for summary judgment. *See id.*

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*,

714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). I view the facts in the light most favorable to State Auto as the party opposing summary judgment. *See Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003); *Lynn v. Monarch Recovery Mgmt., Inc.*, No. WDQ-11-2824, 2013 WL 1247815, at *1 n.5 (D. Md. Mar. 25, 2013).

## DISCUSSION

Defendants Foxwell, Troxell, Childers, and Perry, who are Maryland Division of Correction employees, argue *inter alia* that Plaintiff has failed to exhaust his administrative remedies. Defs.' Mem. 22-24. They have attached certified records reflecting Plaintiff's efforts to exhaust.

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he phrase 'prison conditions' encompasses 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), *aff'd*, 98 Fed. App'x 253 (4th Cir. 2004).

A claim that has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). Therefore, a court ordinarily "may not excuse a failure to exhaust." *Id.* at

7

1856 (*citing Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion")). Moreover, "[e]xhausting administrative remedies after a complaint is filed will not prevent a case from being dismissed for failure to exhaust administrative remedies. Exhaustion is a precondition to filing suit in federal court." *Kitchen v. Ickes*, 116 F. Supp. 613, 624–25 (D. Md. 2015) (internal citation omitted).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee. Md. Code Ann., Corr. Servs. § 10-206(a). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. *See id.* § 10-206(b). There is an established administrative remedy procedure process that applies to all Maryland prisons. Md. Code Regs. ("COMAR") 12.02.28.01 *et seq.* Therefore, when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

Thus, for most grievances filed by Maryland state prisoners, filing a request for administrative remedy ("ARP") with the prison's managing official is the first of three steps in exhausting administrative remedies as required under § 1997e(a). *See* COMAR 12.07.01.04. The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. *Id.* at 12.07.01.05A. If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. *Id.* at 12.07.01.05C. If the appeal is denied, the prisoner then has 30 days to file a grievance with the IGO. *See* Corr. Servs. §§ 10-206, 10-210; COMAR 12.07.01.03 and 12.07.01.05B. The IGO then reviews the complaint and either dismisses it without a hearing, if it is "wholly lacking in merit on its face," or refers it

to an administrative law judge for a hearing.[2] Corr. Servs. §§ 10-207, 10-208; Cts. & Jud. Proc. § 10-208(c); COMAR 12.07.01.06A, .07, .07B, .08. The administrative law judge, in turn, may deny all relief or conclude that the inmate's complaint is wholly or partly meritorious, after which the Secretary of DPSCS must make a final agency determination within fifteen days of receipt of the proposed decision. *See* Corr. Servs. § 10-209(b)-(c).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross*, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." 136 S. Ct. at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id*. at 1856-57. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 1855. The *Ross* Court explained that an administrative remedy is available for purposes of the PLRA if it is "'capable of use' to obtain 'some relief for the action complained of.'" 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). Exhaustion is also required even though the full relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741. Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529-30.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 136 S. Ct. at 1859. These are when (1) the remedy operates as a "simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the administrative scheme is so "opaque" as to become "practically speaking, incapable of use"; or (3) prison administrators

---

[2] If the Commissioner fails to respond, the grievant shall file his or her appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

"thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1859-60.

The ARP process applies to most inmate complaints. COMAR 12.02.28.04(A)(7). The institutional ARP process does not, however, apply to complaints relating to prisoner disciplinary procedures and decisions, COMAR 12.02.28.04(B)(3), although the ultimate requirement that an inmate present his grievance to the IGO still applies to such claims. Exhausting administrative remedies regarding disciplinary decisions requires the following: if a prisoner is found guilty of a rule violation, the prisoner is entitled to appeal the hearing officer's guilty decision or sanction to the warden of the facility where he or she is incarcerated. COMAR 12.03.01.30(A)(1),(2). If the prisoner does not file a written appeal with the warden within fifteen days of receipt of the hearing officer's decision, he or she is considered to have waived the right to appeal. COMAR 12.03.01.30(A)(3). If the warden affirms the hearing officer's guilty finding or sanction, the prisoner may then appeal to the IGO. COMAR 12.03.01.30(C); *see also* COMAR 12.07.01.05 and .08. When filing this appeal with the IGO, the prisoner is required to include a copy of the initial notice of inmate rule violation, the hearing record, the appeal to the warden, and the warden's response to the appeal. COMAR 12.07.01.04(B)(9)(b).

The Defendants have demonstrated, and Plaintiff has failed to rebut, that Plaintiff did not exhaust his administrative remedies as to either the claim that he was denied his wrist brace and other property or his claim that he received sausage containing pork stock. Plaintiff had initiated two separate grievances concerning the wrist brace, neither of which was fully exhausted. As to ARP No. 2617-17, Plaintiff had only completed the first step in the ARP process at the time he filed his Complaint; his appeal of the ARP decision still was pending and Plaintiff had not presented his claim to the IGO. As to ARP No. 2800-17, Plaintiff had completed the initial and

10

appeals stages of ARP review at the time he filed his Complaint, but there is no evidence in the record that he filed a grievance with the IGO. Presenting the claim to the IGO would be required whether ARP No. 2800-17 concerned property deprivation (as Plaintiff viewed the grievance) or was instead a challenge to Plaintiff's disciplinary hearing (as Defendant viewed the grievance). As to Plaintiff's grievance about having been served pork, he filed ARP No. 2943-17 but had not received a ruling on this initial grievance before filing his Complaint, much less completed the grievance process by appealing any adverse decision and ultimately filing a grievance with the IGO.

Plaintiff does not allege that administrative remedies were unavailable to him for any of the reasons identified by the *Ross* Court. Moreover, even if Plaintiff subsequently exhausted his administrative remedies, that would not cure the defect because such exhaustion must occur before filing a complaint in federal court. *See Kitchen v. Ickes*, 116 F. Supp. 613, 624–25 (D. Md. 2015).

## CONCLUSION

Accordingly, the Court denies Plaintiff's Motion for Summary Judgment and grants Defendants' Motion for Summary Judgment. Defendants Ricky Foxwell, Robert Toxell, Dale Childers, and Antoinette Perry shall be dismissed. Because Defendant Medical Department has not yet been served, the Court will direct that service be effected on that entity. A separate order follows.

January 10, 2019 _____/S/_____
Date Paul W. Grimm
United States District Judge